**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**CHARLIE LEE, et al.,**

    Plaintiffs-Petitioners,

v.                                                                    No. CIV 98-1056 BB/KBM-ACE

**UNITED STATES AIR FORCE, et al.,**

    Defendants-Respondents.

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO STRIKE EXTRA-RECORD DECLARATIONS**

**THIS MATTER** comes before the Court on the defendants-respondents' ("Respondents") motion to strike (Doc. 118) certain extra-record declarations (exhibits 11, 12, and 13 to Doc. 103, and exhibit 1 to Doc. 132) submitted by the plaintiffs-petitioners ("Petitioners") in support of their administrative appeal from a final agency decision. The Court has examined the parties' submissions (Docs. 119, 135, and 136) and the relevant legal authorities, and, for the reasons set forth below, finds that Respondents are entitled to the relief requested in their motion and, therefore, the extra-record declarations attached to Petitioners' appellate briefs will be **STRICKEN**.

**I.
BACKGROUND**

Petitioners seek judicial review under the Administrative Procedure Act ("APA") and the National Environmental Protection Act ("NEPA") of Respondents' environmental impact statement regarding the proposed expansion of German Air Force ("GAF") operations at Holloman Air Force Base ("GAF Beddown EIS"). See Petitioners' third amended complaint (Doc. 90) at 6, ¶ 5. The GAF Beddown EIS examined Respondents' proposal to expand the GAF tactical training

establishment ("TTE") at Holloman AFB ("HAFB"), wherein the Department of Defense authorized the GAF to beddown thirty GAF Tornado aircraft at HAFB. See Administrative Record, Vol. 1, Book 5, Page 1943.[1]

The United States Air Force ("USAF") discussed in the GAF Beddown EIS potential environmental ramifications of the proposed beddown, including the impact that the beddown might have on extant property values and noise levels. See GAF Beddown EIS at 4-126 (valuation), 3-8 (noise), 5-8 (cumulative effect on noise), and appendix D (aircraft noise analysis). In regard to the valuation issue, the USAF found that while it was impossible to quantify the proposed beddown's impact on property values, "given the rural nature of the area and the relatively sporadic nature of overflights, changes in overflight would not be expected to produce measurable impacts on the economic value of the underlying land." Id. at 4-126. In regard to the noise issue, the USAF found that the proposed beddown would increase aircraft-related noise in some portions of the affected airspace but that the resultant noise measure in human-populated areas would remain below 65 decibels ("dB"), which is a benchmark commonly applied to determine residential land use compatibility around airports and highways. See id. at 5-8 to 5-18. Based on the findings set forth in the GAF Beddown EIS, the USAF approved expansion of GAF operations at HAFB.

Petitioners have appealed from the USAF's final decision in part because they regard as deficient the GAF Beddown EIS's treatment of the valuation and noise issues. See Petitioners' opening appellate brief (Doc. 103) at 11. In support of their appeal, Petitioners have attached to their

---

[1] The GAF Beddown EIS, which begins at Administrative Record, Vol. 1, Book 5, Page 1943, is not individually Bates-stamped. Thus, when the Court references material within that statement, it will use the following convention: GAF Beddown EIS at __ (page number). The "page number" appears at the bottom-right of each respective page.

appellate briefs the declarations of Armand Smith, William J. Weida, Ph.D., and Karl D. Kryter, Ph.D. On the valuation issue, Mr. Smith claims the analysis is flawed because in his opinion there are measurable effects on the appraised value of lands situated under military operations areas and military training routes. See id., exhibit 13, ¶¶ 3-8. On the noise issue, Dr. Weida claims the noise analysis is flawed because the "twin effects of structural and calculation problems render the [USAF's] noise model results completely unreliable." Id., exhibit 11, ¶ 3. Dr. Kryter, for his part, claims the noise analysis is flawed because it is based on "an incomplete and misleading disclosure of research data and methodologies used to assess the adverse effects of aircraft noise . . ." Id., exhibit 12, ¶ 2. Petitioners did not submit the declarations of Mr. Smith, Dr. Weida, or Dr. Kryter to the USAF during the "public comment" period of the NEPA proceedings, so their evaluations are not part of the administrative record. Respondents now seek to strike the extra-record declarations.

## II.
## DISCUSSION

Respondents claim the extra-record declarations attached to Petitioners' appellate briefs should be stricken on the ground that the Court's review of this matter is circumscribed by the administrative record. See Respondents' opening brief (Doc. 119) at 1. As a general rule, judicial review of an agency decision is limited to a review of the record developed during the administrative process. See Custer County Action Ass'n v. Garvey, 256 F.3d 1024, 1027, fn. 1 (10th Cir. 2001), *citing* Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 331 (1976); Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1580 (10th Cir. 1994) ("Reviews of agency action in the district courts must be processed *as appeals*.") (emphasis in original). However, a reviewing court may consider materials outside of the administrative record in certain–albeit,

"extremely limited"–circumstances. See Custer County Action Ass'n, 256 F.3d at 1027, fn. 1 (citation omitted). The Tenth Circuit has opined that such circumstances exist when:

> (1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) evidence coming into existence after the agency acted demonstrates the actions were right or wrong . . . ."

Id., *citing* American Mining Cong. v. Thomas, 772 F.2d 617, 626 (10th Cir. 1985); see CF & I Steel Corp. v. Economic Development Administration, 624 F.2d 136, 141 (10th Cir. 1980) (stating that extra-record evidence may be introduced to show an agency's fraud, bad faith, or bias).

**A.     The USAF Addressed The Valuation And Noise Issues**

    **1.     valuation**

Petitioners claim this Court may consider Mr. Smith's declaration on the valuation issue because the USAF allegedly "ignored" the effects the proposed beddown might have on property values by "completely fail[ing] to undertake any economic analysis . . . ." Petitioners' response brief (Doc. 135) at 3; see Custer County Action Ass'n, 256 F.3d at 1027, fn. 1 (stating that a court reviewing an administrative decision may consider extra-record evidence if the "agency ignored relevant factors it should have considered in making its decision[.]"). That claim is belied by the GAF Beddown EIS, wherein the USAF noted that efforts have been made in certain locations, especially around airports in urban settings, to quantify the economic effects of aircraft overflight on land values but that those efforts have proven extremely difficult, "even in the immediate vicinity of scheduled and direct overflights near airports." GAF Beddown EIS at 4-126. Based on that note, the USAF determined that in this case the proposed beddown's impact on property values was impossible to

quantify because of the rural nature of the area, existing variability in land value, and the relatively sporadic nature of overflights. See id. Contrary to Petitioners' claim, the USAF's determination does not show that the USAF "ignored" the valuation issue. Rather, it shows that the USAF addressed the issue but that in its opinion a dollar amount could not be placed–at least, not prospectively–on the impact of the proposed beddown on extant property values.

Petitioners suggest that the USAF's failure to place a dollar amount on the diminution in land values because of the alleged inability to do so is tantamount to ignoring the issue. See Petitioners' response brief at 3. The Court rejects that suggestion on the ground that the USAF disclosed and then forthrightly discussed its inability to quantify the decrease in property values, a decrease it deemed unlikely and remote. See Environmental Defense Fund, Inc. v. Andrus, 619 F.2d 1368, 1375 (10th Cir. 1980) (stating that if environmental effects "cannot be readily ascertained . . . detailed discussion of environmental effects is not contemplated under NEPA."); Sierra Club v. Sigler, 695 F.2d 957, 973 (5th Cir. 1983) ("Uncertainty as to environmental consequences need not bar action as long as the uncertainty is forthrightly considered in the decisionmaking process and disclosed in the EIS."); Izaak Walton League of America v. Marsh, 655 F.2d 346, 377 (D.C.Cir. 1981) ("Where adverse environmental impacts are not likely, expensive and time-consuming studies are not necessary. So long as the environmental impact statement identifies areas of uncertainty, the agency has fulfilled its mission under NEPA."); Town of Norfolk v. U.S. E.P.A., 761 F.Supp. 867, 887-888 (D.Mass. 1991) (holding that environmental impact statement's failure to put dollar amount on probable decrease in property values as a result of agency action was not unreasonable and did not result in failure to discuss adequately socioeconomic impacts of proposed action). The USAF therefore satisfied its burden under NEPA, because that statute only requires that agencies take a hard

5

look at the potential consequences of proposed actions; it "does not mandate particular results." Colorado Envtl. Coalition v. Dombeck, 185 F.3d 1162, 1172 (10th Cir. 1999) (quotation omitted).

Ultimately, the Court rejects any claim by Petitioners that the USAF arbitrarily excluded or ignored conflicting opinions on the valuation issue. Neither Mr. Smith nor any other person offered the expert evaluations included within his declaration during the "public comment" period, so Petitioners may not use Mr. Smith's declaration to create an issue for administrative review. See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 553-54 (1978) (ruling that a petitioner cannot make "reference to matters that 'ought to be' considered and then, after failing to do more to bring the matter to the agency's attention, seek[] to have that agency determination vacated on the ground that the agency failed to consider matters 'forcefully presented.'"); City of Angoon v. Hodel, 803 F.2d 1016, 1022 (9th Cir. 1986) ("Those who challenge an EIS bear a responsibility to structure their participation so that it is meaningful, so that it alerts the agency to the intervenors' position and contentions."). Accordingly, Mr. Smith's extra-record declaration should be stricken.

**2.    noise**

Petitioners claim this Court may consider the declarations of Dr. Weida and Dr. Kryter on the noise issue because the USAF allegedly "ignored" the effects the proposed expansion would have on noise quality by relying upon "unreliable data in making its noise assessment, despite the availability of more reliable information at the time of the analysis." Petitioners' response brief at 3. The Court rejects that claim on the ground that the GAF Beddown EIS indicates that the USAF did not ignore the noise issue but instead devoted considerable resources, attention, and analysis to potential noise ramifications. See id. at 3-8 (noise), 5-8 (cumulative effect on noise), and appendix D (aircraft noise

6

analysis). Furthermore, the USAF did not arbitrarily exclude or ignore the conflicting opinions of Drs. Weida and Kryter on the noise issue, because they did not express their opinions during the administrative process. See Vermont Yankee Nuclear Power Corp., 435 U.S. at 553-54; City of Angoon, 803 F.2d at 1022. The USAF therefore satisfied its burden under NEPA, because it critically addressed the proposed beddown's potential impact on the noise quality in the region of influence. See Colorado Envtl. Coalition, 185 F.3d at 1172. Accordingly, the extra-record declarations of Drs. Weida and Kryter should be stricken. See Custer County Action Ass'n, 256 F.3d at 1027, fn. 1.

**B.     NEPA Review Is Limited To The Administrative Record**

Petitioners claim that even if the USAF did not "ignore" the valuation and noise issues in the GAF Beddown EIS, this Court may still consider the extra-record declarations as a means of assessing the adequacy of that environmental impact statement, because appeals from NEPA decisions allegedly warrant a different, more probing type of scrutiny than do appeals from other administrative decisions. See Petitioners' response brief at 3. In support of their claim, Petitioners argue that NEPA appeals are "unique" in that reviewing courts must "'ensure that the information available to the decision-maker includes an adequate discussion of environmental effects and alternatives . . . which can sometimes be determined only by looking outside the administrative record to see what the agency may have ignored.'" Id., *quoting* County of Suffolk v. Secretary of the Interior, 562 F.2d 1368, 1384-85 (2nd Cir. 1977).

The Court rejects Petitioners' claim on two grounds. First, the Tenth Circuit has articulated the standard of review for NEPA cases and that standard is no different from the standard applicable to any other administrative appeal governed by the APA. See Custer County Action Ass'n, 256 F.3d

at 1027, fn. 1; Olenhouse, 42 F.3d at 1580. In the Custer County Action Ass'n case, the Tenth Circuit ruled that reviewing courts cannot set aside an agency's final environmental assessment merely because the petitioners, as Petitioners do in this case, question the agency's scientific methodology, data, opinions, or conclusions. In support of its ruling, the Tenth Circuit stated:

> As so often is the case in disputes concerning the potential environmental impacts of a project, Petitioners' claim boils down to a disagreement over scientific opinions and conclusions. While we appreciate Petitioners' concerns over noise impacts, and do not ignore the fact contradictory evidence and data may well exist, the mere presence of contradictory evidence does not invalidate the [a]gencies' actions or decisions. We cannot displace the agencies' choice between two conflicting views, even if we would have made a different choice had the matter been before us de novo.

256 F.3d at 1036 (quotations omitted).

This Court therefore will not set aside the USAF's final decision merely because Petitioners have cited a Second Circuit case that apparently permits reviewing courts in NEPA cases to more liberally consider extra-record materials than does the Tenth Circuit. See U.S. v. Spedalieri, 910 F.2d 707, 709 (10th Cir. 1990) (ruling that this Court is bound by Tenth Circuit precedent). And furthermore, the underlying premise of Petitioners' argument as articulated in the County of Suffolk case–that NEPA cases are somehow "unique" because reviewing courts must ensure that administrative agencies have discharged their affirmative duty to consider environmental effects and alternatives–is incorrect. Richard J. Pierce, Jr., a seminal authority on administrative law, has explained why NEPA cases are not unique:

> Most agency-administered statutes impose similar affirmative duties on agencies. Thus, for instance, 47 U.S.C. § 160(b), a provision of the Telecommunications Act of 1996, imposes on the FCC an affirmative duty to determine the competitive effects of a variety of potential actions. Moreover, in Motor Vehicle Manufacturers Assn. v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29 (1983) . . ., the Court imposed on all agencies an affirmative duty "to consider . . . important aspect[s] of

8

the problem" it is addressing. Thus, much of the administrative process of judicial review of agency actions of all types consists of a search for omissions and inadequacies in an agency record.

Richard J. Pierce, Jr., Administrative Law Treatise § 11.6 (4th ed 2002). Like Professor Pierce, this Court concludes that NEPA's relative "ordinariness" undermines the argument that NEPA appeals are entitled to special scrutiny apart from the scrutiny accorded to other administrative appeals. See id. The exception to the record rule is supposed to apply only in "extremely limited" and "rare" circumstances; NEPA cases, in and of themselves, are neither extremely limited nor rare. Accordingly, the Court rejects Petitioners' claim that NEPA appeals are exempt from the record rule.

The Court's decision is especially warranted in this case, because the studies and expert opinions set forth in the declarations of Mr. Smith, Dr. Weida, and Dr. Kryter were never presented and therefore never considered by the USAF during the administrative process. See Cronin v. U.S. Dept. of Agriculture, 919 F.2d 439, 444 (7th Cir. 1990) ("Administrative agencies deal with technical questions, and it is imprudent for the generalist judges of the federal district courts and courts of appeals to consider testimonial and documentary evidence bearing on those questions unless the evidence has first been presented to and considered by the agency.").

## III.
## CONCLUSION

The USAF did not "ignore" the valuation and noise issues in its NEPA analysis. In particular, the USAF did not "ignore" the studies and expert evaluations set forth in Petitioners' extra-record declarations because those declarations were neither presented to nor argued before the USAF during the administrative process. Petitioners' argument therefore devolves into a post hoc attack on the merits of the GAF Beddown EIS. Such an attack cannot be sustained by Petitioners' extra-record

9

declarations in this appeal as NEPA appeals are not exempt from the record rule. Accordingly, the extra-record declarations attached to Petitioners' appellate briefs will be stricken, and this Court's review of the USAF's final decision will be limited to the administrative record.

## ORDER

**WHEREFORE**,

**IT IS ORDERED** that:

1. Mr. Armand Smith's declaration, attached as exhibit 13 to Petitioners' opening appellate brief (Doc. 103), is **STRICKEN**;

2. Dr. William J. Weida's declarations, attached as exhibit 11 to Petitioners' opening appellate brief (Doc. 103) and as exhibit 1 to Petitioners' reply appellate brief (Doc. 132), are **STRICKEN**; and

3. Dr. Karl D. Kryter's declaration, attached as exhibit 12 to Petitioners' opening appellate brief (Doc. 103), is **STRICKEN**.

**DATED** at Albuquerque this 27th day of August, 2002.

_____
BRUCE D. BLACK
United States District Judge

**Attorneys:**

For Plaintiffs-Petitioners:

    Frank Bond, Santa Fe, N.M.
    Faith Kalman Reyes, Santa Fe, N.M.
    Joseph Van R. Clarke, Santa Fe, N.M.

For Defendants-Respondents:

    Raymond Hamilton, Albuquerque, N.M.
    Major Kenneth Theurer, Arlington, Va.