**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**CHARLIE LEE, et al.,**

    Plaintiffs-Petitioners,

v.                                                                                                                         No. CIV 98-1056 BB/KBM-ACE

**UNITED STATES AIR FORCE, et al.,**

    Defendants-Respondents.

**MEMORANDUM OPINION AND ORDER
GRANTING RESPONDENTS' MOTION TO DISMISS
PETITIONERS' EIGHTH, TENTH, ELEVENTH, AND TWELFTH CLAIMS**

**THIS MATTER** comes before the Court on the defendants-respondents' ("Respondents") motion to dismiss (Doc. 137) the plaintiffs-petitioners' ("Petitioners") eighth, tenth, eleventh, and twelfth claims for relief. (Doc. 90, ¶¶ 72-75 and ¶¶ 81-92). The Court has examined the parties' submissions (Docs. 138, 142, 144, 161, and 162) and the relevant legal authorities, and, for the reasons set forth below, finds that Respondents are entitled to the relief requested in their motion and, therefore, Petitioners' aforementioned claims will be **DISMISSED**.

**I.
BACKGROUND**

Petitioners seek to enjoin the German Air Force ("GAF") from performing military training exercises at Holloman Air Force Base ("HAFB"). See Petitioners' third-amended complaint ("complaint") at 36, ¶¶ J and L. The GAF is currently performing such exercises at HAFB pursuant to a memorandum of agreement ("Agreement") entered into by the United States Air Force ("USAF") and Germany's Federal Ministry of Defense ("FMOD"). See Administrative Record, vol.

5, page 1943, appendix A.[1] In support of their request for injunctive relief, Petitioners claim that: (A) the GAF, in violation of 49 U.S.C. § 40103(d), is navigating United States' airspace without authorization from the Secretary of State; and (B) the USAF, in violation of 1 U.S.C. § 112b, Department of Defense ("DoD") Directive 5530.3, and 11 Foreign Affairs Manual ("FAM") 722.3, executed the Agreement without the approval of the Secretary of State, the Secretary of Defense, and Congress. Respondents now move to dismiss Petitioners' eighth, tenth, eleventh, and twelfth claims.

## II.
## DISCUSSION

### A. Claim Eight (Federal Aviation Act)

Petitioners claim the GAF, in violation of the Federal Aviation Act, is navigating the airspace of the United States without the Secretary of State's permission. See Petitioners' complaint at 30, ¶¶ 73-75, *citing* 49 U.S.C. § 40103(d). Section 40103(d) of the Federal Aviation Act provides that "[a]ircraft of the armed forces of a foreign country may be navigated in the United States only when authorized by the Secretary of State." Petitioners argue that because the GAF allegedly lacks such authorization from the Secretary of State, its presence in the United States is illegal and it must therefore be enjoined from performing military training exercises at HAFB.

Respondents contend that Petitioners may not bring a civil action to enforce Section 40103(d) of the Federal Aviation Act.[2] See Respondents' opening brief (Doc. 138) at 6; Petitioners' response

---

[1] The Agreement, which begins at Administrative Record, Vol. 1, Book 5, Page 1943, Appendix A, is not individually Bates-stamped. Thus, when the Court references material within the Agreement, it will use the following convention: Agreement at __ (page number). The "page number" appears at the bottom-center of each respective page.

[2] Respondents maintain that the Secretary of State has authorized the GAF to navigate the airspace of the United States. See Respondents' opening brief at 10. However, in support of the extant motion, Respondents contend that it is immaterial whether the Secretary of State has so authorized the GAF because of Petitioners' purported inability to state a cognizable claim.

brief (Doc. 142) (failing to respond to Respondents' opening brief on this issue).[3]  In order to determine whether a person may assert a federal claim, courts must consider "whether Congress, expressly or by implication, intended to create a private cause of action."[4]  Schmeling v. Nordam, 97 F.3d 1336, 1344 (10th Cir. 1996), *citing* Cort v. Ash, 422 U.S. 66 (1975).  The analysis begins by examining the statute's language.  See Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979).  If the statute is silent, the statute's legislative history may be examined.  See Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 18 (1979).  In an attempt to determine Congress's intent, courts also may consider whether the statute's underlying purpose would be served by the existence of a private cause of action and whether the statute was enacted for the special benefit of a person like the plaintiff.  See Schmeling, 97 F.3d at 1343-44.  Ultimately, even in the absence of a private right of action, a plaintiff may bring suit under the APA to enforce a statute if the plaintiff's interest falls within the statute's "zone of interests".  See Hernandez-Avalos, 50 F.3d at 848.

1. **express right**

The first issue is whether Petitioners have express authority to assert in federal court an alleged violation of Section 40103(d) of the Federal Aviation Act.  See Respondents' opening brief at 6.  There is a general presumption that Congress does not intend silence to authorize a private right

---

[3] Petitioners have failed to respond to Respondents' motion to dismiss their eighth claim for relief. Petitioners' failure provides a sufficient basis for this Court to grant the motion.  See D.N.M.LR-Civ. 7.1(b).  However, given Respondents' detailed brief and the protracted nature of this litigation, in the interests of justice and judicial economy the Court will dispose of this issue on the merits.

[4] A plaintiff who lacks a private right of action under a federal statute may bring suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq., to enforce the statute if the plaintiff's interest falls within the "zone of interests" protected by that statute.  See Hernandez-Avalos v. INS, 50 F.3d 842, 848 (10th Cir. 1995).  Rather than immediately delving into the "zone of interests" inquiry, this Court will first explain why Petitioners lack a private right of action under Section 40103(d) of the Federal Aviation Act, as that explanation supports the ultimate conclusion that Petitioners' interests do not fall within the statutory zone of interests.  See id. (utilizing a similar approach).

3

of action, and this presumption has been specifically applied to a broad range of claims under the Federal Aviation Act. See e.g., Sam L. Majors Jewelers v. ABX, Inc., 117 F.3d 922, 925 (5th Cir. 1997) (holding that there is no action for lost luggage); Wright v. Bond-Air, Ltd., 930 F.Supp. 300, 305 (E.D.Mich. 1996) (holding that Federal Aviation Act does not create federal jurisdiction for private products liability claim); Rachford v. Evergreen Intern. Airlines, Inc., 596 F.Supp. 384, 386 (N.D.Ill. 1984) (holding that Federal Aviation Act does not create whistleblower action). In the Schmeling case, the Tenth Circuit held that Congress did not expressly authorize a private person to bring a civil action to enforce a regulation prescribed under the Federal Aviation Act. 97 F.3d at 1336. The Tenth Circuit supported its holding by stating:

> Congressional intent as to who has the power to enforce the drug-testing laws is clear in 49 U.S.C. §§ 46106 - 46108. Section 46106 provides that the FAA Administrator may bring a civil action to enforce the laws. Section 46107(b) allows the United States Attorney General to bring such an action at the request of the FAA Administrator. . . . Nowhere has Congress manifested an intent to allow a person other than the FAA Administrator or the Attorney General to enforce the drug-testing laws.

Id. (emphasis added); see Kodish v. United Air Lines, Inc., 628 F.2d 1301, 1302 (10th Cir. 1980) (no private action for failure to hire pilot).

The underlying rationale of the holding in the Schmeling case controls the issue before this Court because Sections 46106 and 46107(b) apply with equal force to Section 40103(d). Compare 49 U.S.C. §§ 46106, 46107, and 46108 (establishing in concert that with the exception of an action to enforce 49 U.S.C. § 41101(a)(1), Congress did not expressly provide private persons with a right of action under the Federal Aviation Act). Moreover, other courts have specifically held that 49 U.S.C. § 40103 and its earlier codifications do not demonstrate any Congressional intent to create a private right to enforce its provisions. See Sea Air Shuttle Corporation v. United States, 112 F.3d

4

532 (1st Cir. 1997); Spinner v. Verbridge, 125 F.Supp.2d 45 (E.D.N.Y. 2000). The Federal Aviation Act does not expressly authorize Petitioners to assert their eighth claim.

The legislative history of the Federal Aviation Act also indicates that Congress did not express any intention for private persons to assert alleged violations of Section 40103(d). Petitioners have not cited, and the Court has not located, any language in the Federal Aviation Act's legislative history regarding the creation of a private right of action for persons aggrieved by the unauthorized presence of foreign military aircraft in the United States. See Petitioners' response brief; see also 1958 U.S.C.C.A.N. 3741, 85th Congress, Second Session. The Federal Aviation Act's legislative history does not evince an express intent by Congress to provide Petitioners with a private cause of action.

**2.    implied right**

The second issue is whether Petitioners have an implied right to enforce Section 40103(d) in federal court. See Respondents' opening brief at 7. Congress established a comprehensive system for enforcing the Federal Aviation Act's substantive provisions. For example, in Section 46101(a)(1), Congress enabled private persons like Petitioners to initiate an administrative investigation by filing a written complaint with the Secretary of Transportation ("Secretary"). In conducting such an investigation, the Secretary is authorized to subpoena witnesses and records, administer oaths, examine witnesses, and admit evidence. See 49 U.S.C. § 46104. If the Secretary finds that the individual's grievance is well-grounded, the Secretary "shall issue an order to compel compliance." 49 U.S.C. § 46101(a)(4). Ultimately, if the grievance is not remedied at the administrative level, either the Secretary or the Attorney General (at the behest of the Secretary) may bring a civil action in federal court. See respectively 49 U.S.C. § 46106 and 49 U.S.C. § 46107.

The comprehensive enforcement system embodied in the Federal Aviation Act strongly indicates that Congress did not implicitly intend to create a private right of action under Section 40103(d), because the underlying purpose of the statute would not be served by implying a judicial right of action. See Schmeling, 97 F.3d at 1343-44. In the words of the Supreme Court:

> [W]here a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies. In such cases, in the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.

Karahalios v. National Federation of Federal Employees, Local 1263, 489 U.S. 527, 533 (1989) (internal quotations omitted); see Chan v. City of New York, 1 F.3d 96, 102 (2nd Cir. 1993) (relying upon the Karahalios case to hold that the Federal Aviation Act's "enforcement mechanisms are strong indicia that Congress did not envision a private right of action under the FAA's drug testing regulations . . . ."). In this case, Congress has expressly provided a remedy for individuals like Petitioners who contend that foreign military aircraft are navigating United States' airspace without the Secretary of State's authorization; their remedy is to file a complaint with the Secretary of Transportation, not to file a complaint in federal court. Put a different way, Congress enacted Section 40103(d) for the military benefit of the United States as an aggregate, not for the special benefit of private persons like Petitioners. See Cleveland By and Through Cleveland v. Piper Aircraft Corp., 985 F.2d 1438 (10th Cir. 1993) (stating that Congress enacted 40103(d) for the purpose of keeping "the United States free from military planes from foreign nations, and not domestic safety concerns."). The Court therefore concludes that Congress did not intend, either expressly nor by implication, to create a private judicial right of action under Section 40103(d) of the Federal Aviation Act.

### 3. zone of interests

In addition to the fact that Congress did not provide Petitioners with a private judicial right of action, the Court concludes that allowing Petitioners to go forward with their eighth claim would frustrate the underlying purpose of Section 40103(d). See Respondents' reply brief (Doc. 144) at 9-10. It is extremely unlikely that Congress intended the Federal Aviation Act's comprehensive enforcement system along with the Secretary of Transportation's broad discretion to investigate and prosecute grievances asserted under Section 40103(d) to be upset by individual suits brought by persons concerned with property and environmental issues. See Hernandez-Avalos, 50 F.3d at 848 (holding that plaintiffs lacked standing to bring suit seeking to compel agency to enforce a federal statute because Congress did not intend such persons to be relied upon to challenge disregard of statutory mandate). The fact that Petitioners might advance Section 40103(d)'s underlying purpose if it were enforced in this case fails to provide a legitimate basis for allowing their claim to go forward because the interests they assert--quiet enjoyment to their property, preservation of the environment, and a properly conducted NEPA analysis--are interests not protected by the statute at issue. See id. at 847, fn. 11 ("[T]he fact that a suit by [a plaintiff] may advance a statute's purpose does not mean that the interest the [plaintiff] seeks to vindicate is within the zone of interests protected by the statute.") (internal quotation omitted); see also Drake v. Delta Airlines, Inc., 923 F.Supp. 387, 393 (E.D.N.Y. 1996). For all of the foregoing reasons, Petitioners' eighth claim should be dismissed.

**B.  Claims Ten (DoD Directive), Eleven (FAM Procedure), and Twelve (Case-Zablocki Act)**

Petitioners claim the Agreement is invalid because the USAF failed to comply with the Case-Zablocki Act, the DoD directive, and the FAM procedure. See Petitioners' complaint at 31-34. The Case-Zablocki Act and its implementing regulations pertain to "international agreements." See

generally 1 U.S.C. § 112b, DoD Directive 5530.3, and 11 FAM 722.3.  In particular, they prescribe certain steps that must be undertaken when an international agreement is executed.  In response, Respondents contend that Petitioners' claims should be dismissed because: (1) the Agreement is not an international agreement and, therefore, it is not subject to the laws appurtenant to international agreements; and (2) assuming *arguendo* that the Agreement is an international agreement, the Court cannot invalidate it even if the USAF failed to comply with the Case-Zablocki Act, the DoD directive, and the FAM procedure.  See Respondents' supplemental brief (Doc. 162) at 9-10; Respondents' opening brief at 12-13; Respondents' reply brief at 3-4.

**1.  international agreement**

An international agreement is an agreement between two or more international entities that: (a) is intended to be legally binding upon the extant parties, and (b) is governed by international law. See Restatement (Third) of Foreign Relations Law of the United States § 301(1) (1986) ("'international agreement' means an agreement between two or more states or international organizations that is intended to legally binding and is governed by international law . . . .") (emphasis added); 22 C.F.R. § 181.2(a)(1) (stating that to enter into an international agreement, "the parties must intend their undertaking to be governed by international law . . . ."); U.S. Olympic Committee v. Intelicense Corp., S.A., 737 F.2d 263, 268 (2nd Cir. 1984) (holding that IOC charter not a binding treaty where not executed as required by article II, § 2 of U.S. Constitution and no evidence United States intended to be bound thereby).  Petitioners contend that the Agreement is legally binding upon the USAF and the FMOD.  See Petitioners' supplemental brief (Doc. 161) at 8, 15-18.  The Court disagrees.  According to the Agreement:

> Any disagreement regarding the interpretation, application, or implementation of this Agreement not resolved by the [Senior German National Representative] and the [49th Fighter Wing Commander] <u>shall be resolved by consultation between the Parties, and shall not be referred to an international tribunal or third party for settlement.</u>

Id. at 10 (emphasis added).

The Agreement, by its clear and express terms, denies the USAF and the FMOD a legal remedy in any legal forum should they have a dispute arising out of or concerning their understanding. By removing the Agreement and disputes related thereto from any legal authority with the corresponding power to provide a binding legal remedy, the parties failed to execute or enter into an international agreement. See Restatement (Third) of Foreign Relations Law § 301(1). It follows that the Agreement is not subject to the Case-Zablocki Act, DoD Directive 5530.3, or 11 FAM 722.3. Petitioners' claims based on the Case-Zablocki Act and its implementing regulations should therefore be dismissed.

In drawing its conclusion, the Court notes that the Agreement, as an agreement resting exclusively upon the parties' goodwill and good faith for resolving disputes, may be construed as a "nonbinding agreement." Restatement (Third) of Foreign Relations Law § 301 cmt. e; cf. <u>Frolova v. Union of Soviet Socialist Republics</u>, 761 F.2d 370, 376-78 (7th Cir. 1985) (per curiam). A nonbinding agreement, far from being unusual or disfavored in the international community, is a legitimate vehicle for a "head of state or his agent to make commitments with the intention of honoring them, but without the need of going through what may be perceived as a cumbersome constitutional approval[] or reporting process reserved for binding agreements." Congressional Research Service, Library of Congress, 103D Cong., <u>Treaties and Other International Agreements: The Role of the United States Senate</u> 37 (Comm. Print 1993). The USAF and the FMOD apparently

used the Agreement in part to avoid the cumbersome reporting process that Petitioners now seek to invoke. There is nothing illegal nor improper in the parties' decision to do so. Accordingly, the Agreement is not subject to the Case-Zablocki Act, DoD Directive 5530.3, or 11 FAM 722.3.

**2.　injunctive relief**

**a)　standing**

Assuming *arguendo* the Agreement is an international agreement, Petitioners lack standing to bring suit, either directly under the Case-Zablocki Act or indirectly under the APA. That point is made clear by the Case-Zablocki Act's implementing regulation, which provides in relevant part:

> <u>Deviation or derogation from the provisions of this part</u> will not affect the legal validity, under United States law or under international law, of agreements concluded, <u>will not give rise to a cause of action</u> and will not affect any public or private rights established by such agreements.

22 C.F.R. § 181.1(b) (emphasis added). More than foreclosing a private right of action under the Case-Zablocki Act, Section 181.1(b) precludes any party from bringing suit against the federal government for the alleged violation of the Case-Zablocki Act, as that statute fails to create a right or benefit in any person or entity. <u>See</u> <u>Hernandez-Avalos</u>, 50 F.3d at 848. Because Section 181.1(b) makes clear that Congress intended that no person or entity be able to bring suit to enforce the Case-Zablocki Act, "no one can satisfy the zone of interests test, and therefore no would-be plaintiff has standing to bring suit . . . ." <u>Id.</u>

**b)　valid agreement**

Finally, Petitioners are not entitled to the injunctive relief they have requested irrespective of whether the USAF had to, but did not, comply with the Case-Zablocki Act, the DoD directive, and

10

the FAM procedure.  See Respondents' opening brief at 12-13; see also Respondents' reply brief at 3.  Again, Section 181.1(b) provides in relevant part:

> Deviation or derogation from the provisions of this part will not affect the legal validity, under United States law or under international law, of agreements concluded, will not give rise to a cause of action and will not affect any public or private rights established by such agreements.

22 C.F.R. § 181.1(b) (emphasis added); see 11 FAM 712 ("Deviation or derogation from the provisions of this chapter will not . . . affect the validity of negotiations engaged in or of treaties or other agreements concluded.").  The plain language of Section 181.1(b) and 11 FAM 712 compel the conclusion that the Court cannot void or otherwise invalidate the Agreement even if the USAF had to, but did not, comply with the Case-Zablocki Act and its implementing regulations.  Petitioners are therefore not entitled to the injunctive relief requested in their tenth, eleventh, and twelfth claims, as Congress foreclosed the imposition of that remedy.

## III.
## CONCLUSION

For the reasons stated, the Court finds that claims eight, ten, eleven, and twelve of Petitioners' third-amended complaint should be dismissed.

## ORDER

**WHEREFORE**,

**IT IS ORDERED** that Petitioners' eighth, tenth, eleventh, and twelfth claims for relief be **DISMISSED**.

**DATED** at Albuquerque this 27th day of August, 2002.

_____
BRUCE D. BLACK
United States District Judge

**Attorneys:**

For Plaintiffs-Petitioners:

    Frank Bond, Santa Fe, N.M.
    Faith Kalman Reyes, Santa Fe, N.M.
    Joseph Van R. Clarke, Santa Fe, N.M.

For Defendants-Respondents:

    Raymond Hamilton, Albuquerque, N.M.
    Major Kenneth Theurer, Arlington, Va.